UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00029-LLK

LESLIE ANN MORRIS  PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to the fourth sentence of 42 U.S.C. § 405(g), of the final decision of the Commissioner finding that her disability ended on December 9, 2011. Plaintiff's fact and law summary is at Docket # 15, and her motion for a remand pursuant to the sixth sentence of Section 405(g) is at Docket # 16. Defendant's responsive fact and law summary and response in opposition to Plaintiff's motion are at Docket # 17. The parties have consented to the jurisdiction of the undersigned magistrate judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 11.) The matter is ripe for determination.

Because the administrative law judge's ("ALJ's") decision is supported by substantial evidence and is in accord with applicable legal standards, and because Plaintiff has not shown that a "sentence six" remand is warranted, the Court will DENY Plaintiff's motion for a remand (Docket # 16), AFFIRM the Commissioner's final decision, and DISMISS Plaintiff's complaint.

**Background facts and procedural history**

On April 29, 2008, the Social Security Administration found Plaintiff to be disabled. [Administrative Record ("AR") 34, 799.] On December 9, 2011, as part of its continuing disability review, the Administration found that Plaintiff's disability ended in December 2011. [AR 34, 832.] The finding was affirmed on multiple levels of administrative review, including a hearing and decision by a disability hearing officer, and Plaintiff eventually requested review by an ALJ. [AR 858-68, 886.] The ALJ conducted

1

an administrative hearing [AR 751-98] and, on December 13, 2016, issued a decision affirming the prior decisions and finding that Plaintiff's "disability ended on December 9, 2011, and the claimant has not become disabled again since that date." [AR 46.] The ALJ's decision became the Commissioner's final decision, subject to this judicial review, when the Appeals Council found no basis for changing the ALJ's decision. [AR 1-4.]

### Legal standards governing cessation of disability

In cessation of disability cases, the central question is whether Plaintiff's medical impairments have improved to the point she is now able to perform substantial gainful activity. *Kennedy v. Comm'r of Soc. Sec.*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing 42 U.S.C. § 423(f)(1)). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. *Id.* (quoting 20 C.F.R. § 404.1594(b)(1)). There is no presumption of continuing disability. *Id.* (citing *Cutlip v. Sec'y of Health & Human Services*, 25 F.3d 284 n. 1 (6th Cir. 1994)). Instead, the Commissioner applies the procedures outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether Plaintiff's disability ended and she is now able to work. *Id.*

The first part of the evaluation process focuses on medical improvement, which is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." *Id.* at 764-65 (quoting 20 C.F.R. § 404.1594(b)(1)). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* at 765 (quoting 20 C.F.R. § 404.1594(b)(1)). Additionally, the medical improvement must be related to Plaintiff's ability to work, which is the case only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." *Id.* (quoting 20 C.F.R. § 404.1594(b)(3)).

The second part of the evaluation process relates to Plaintiff's ability to engage in substantial gainful activity. *Id.* The evaluation incorporates many of the standards governing initial disability determinations. *Id.* (citing 20 C.F.R. § 404.1594(f)).

**The ALJ's decision**

On April 29, 2008, the Administration found Plaintiff to be disabled because she suffered from borderline intellectual functioning and a mood disorder rendering her unable to relate adequately to others and regularly complete tasks over a 40 hour work week. [AR 37, 1272.]

On December 13, 2016, the ALJ found that (relative to her condition on April 29, 2008), as of December 9, 2011, Plaintiff experienced a medical improvement related to her ability work. [AR 39.] In support of this finding, the ALJ cited the November 15, 2011 examination findings of certified psychologist Ollie C. Dennis, Ed.D.; Plaintiff's mental health treatment records; and her testimony regarding her activities of daily living (ADLs). [*Id.*] Specifically, Dr. Dennis observed no "instances of disability"; assigned a global assessment of functioning (GAF) of 58[1]; and noted that Plaintiff was not taking any medication for depression. [*Id.* referencing findings, AR 1307-13.] Treatment records indicated a GAF score of 55 and ability to do ADLs with medication. [*Id.* referencing records, AR 1525, 1531, 1536.] Plaintiff testified that she cooks, does household chores, slept in a van while camping, went on spring break in 2016, plays cards almost every night, and recently went to a Chinese buffet. [*Id.* referencing testimony, AR 757-80.]

The ALJ found that Plaintiff's "disability ended on December 9, 2011, and the claimant has not become disabled again since that date." [AR 46.] In other words, the ALJ found that Plaintiff's medical improvement related to her ability work rendered her "not disabled" as of December 9, 2011, and that

---

[1] The most recent version of the Diagnostic and Statistical Manual of Mental Disorders (DSM) does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). According to an earlier version of the DSM, a GAF between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"; 51 and 60 describes "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning"; and 61 and 70 describes "some mild symptoms" or "some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34 (4th ed. 2000).

3

she remained "not disabled" through the December 13, 2016 decision date. Focusing on the period between December 9, 2011 and December 3, 2016 and translating the ALJ's findings into the familiar 5-step sequential evaluation process that applies to initial disability determinations, the ALJ found as follows: First, Plaintiff has not engaged in substantial gainful activity since December 9, 2011. [AR 37.] Second, Plaintiff suffers from severe, or vocationally significant, mental and physical impairments. [*Id.*] Mentally, Plaintiff suffers from affective disorder/major depression, anxiety disorder, and borderline intellectual functioning. [*Id.*] Physically, Plaintiff suffers from status-post right L5-S1 hemilaminectomy with a partial facetectomy, cervical disc degeneration, hypothyroidism, chronic obstructive pulmonary disease, carpal tunnel syndrome, obesity, diabetes mellitus, and dyspnea (labored breathing). [*Id.*] Third, none of these impairments satisfies the clinical criteria of any impairment listed in Appendix 1 of the regulations. [AR 38.]

As required in any case that advances beyond step 3, the ALJ determined Plaintiff's mental and physical residual functional capacity (RFC). [AR 41.] Mentally, Plaintiff is limited to performing simple, routine tasks; can respond appropriately to supervision, coworkers, and work situations, but should have only occasional interaction with coworkers and supervisors and occasional contact with the public; and is limited to tolerating few changes in a routine work setting, defined as occasional decision-making and completion of simple tasks. [*Id.*] Physically, Plaintiff is limited to sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) with frequent handling, fingering and feeling with the left hand; occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, crouching and crawling; no working at unprotected heights or around mechanical parts; and no concentrated exposure to extreme cold, humidity, fumes, odors, gases and pulmonary irritants. [*Id.*]

Fourth, Plaintiff is unable to perform any past relevant work. [AR 44.] Fifth, Plaintiff is not disabled because she retains the ability to perform a significant number of jobs in the national economy such as sedentary, unskilled office clerk, assembler, and inspector. [AR 45-46, 783.]

**The ALJ's physical RFC findings are supported by substantial evidence.**

Plaintiff's primary argument is that the ALJ's physical RFC findings, which limited her to sedentary work, are not supported by substantial evidence because the ALJ based them, in part, on "stale" medical opinions, which were over five years old at the time of the ALJ's decision. Specifically, in determining Plaintiff's RFC, the ALJ's December 13, 2016 decision gave "great weight" to the October 10, 2011 examination findings of David Winkle, M.D. [AR 43, 1297-1301] and "partial weight" to the November 30, 2011 findings of non-examining physician Sudhideb Mukherjee [AR 1315-22] and the May 15, 2012 findings of non-examining physician P. Saranga [AR 1412-19], both of which allow for medium work, including 6 hours of standing/walking per 8-hour workday.[2]

There will always be a gap between the time the agency experts review the record and give their opinion and the time the hearing decision is issued. *Kelly v. Comm'r*, 314 F. App'x 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.*; s*ee also McGrew v. Comm'r*, 343 F. App'x 26, 32 (6th Cir. 2009) (The ALJ did not improperly rely on the state agency physicians' stale opinions where it was clear the ALJ considered the medical examinations that occurred after the opinions were rendered and took into account any changes).

While admittedly 5-year-old medical opinions are a bit stale, the ALJ's partial reliance on those opinions in support of a finding that Plaintiff can perform some sedentary jobs did not rise to the level of a reversible error for two reasons. First, the administrative record contains no subsequent opinion from a medical source (given after the opinions the ALJ relied upon) as to what Plaintiff can still do despite her impairments. *See Blakley v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009) (Where the ALJ preferred the non-

---

[2] As indicated above, the ALJ found that that Plaintiff's "disability ended on December 9, 2011 and [Plaintiff] has not become disabled again since that date." [AR 46.] Thus, the ALJ found Plaintiff to be not disabled before and after December 9, 2011. The ALJ's finding of lack of disability before December 9, 2011 was not based on stale evidence.

examining source opinion over the subsequent opinion of the treating source, "we require some indication that the ALJ at least considered these facts [i.e., the subsequent medical evidence considered by the treating source] before giving greater weight to an opinion that is not based on a review of a complete case record"). Second, the ALJ's RFC determination reflects adequate consideration of the subsequent medical evidence. Specifically, the ALJ acknowledged that "[a]dditional evidence was presented at the hearing level that supported limiting the claimant to the sedentary [as opposed to the medium] level." [AR 43.]

Plaintiff complains that the ALJ's decision did not discuss the impact on her RFC of CT-scan evidence from July 2012, which shows moderate canal stenosis at L4-L5 with moderate bilateral neural foraminal narrowing and worsening from the prior examination in April 2008; CT-scan evidence from July 2015, which shows severe canal narrowing at L4-L5 with mild right neural foraminal narrowing; and nerve testing from July 2015, which shows moderate left side and moderate to severe right side carpal tunnel syndrome. (Docket # 15 at 5-6 referencing evidence, AR 2100, 2099, 2107.) While, ideally, the ALJ should have discussed the impact of this evidence, which was unavailable to Drs. Winkle, Mukherjee, and Saranga, on his RFC findings, Plaintiff has not shown that the evidence is incompatible with performance of even a limited range of sedentary work. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Sec'y*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

**Plaintiff's treatment notes after the ALJ's decision do not warrant a "sentence six" remand.**

As indicated at the outset, Plaintiff filed a motion for a remand for consideration of allegedly new and material evidence pursuant to the sixth sentence of 42 U.S.C. § 405(g). (Docket # 16.) Sentence 6 authorizes the Court to remand for consideration of addition evidence "only upon a showing that there is new evidence [not before the ALJ] which is material and that there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding." Evidence is material only if Plaintiff shows that there is a "reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Miller v. Comm'r*, 811 F.3d 825, 839 (6th Cir. 2016) (quoting *Sizemore v. Sec'y*, 865 F.2d 709, 711 (6th Cir. 1988)).

In this case, the allegedly material evidence consists of physical treatment notes from Phillip Singer, M.D., Western Kentucky Orthopaedic and Neurosurgical Associates [AR 289-292] and records from Greenview Hospital [AR 88-237]. (Docket # 16-1 at 1.) Plaintiff has not shown that the evidence is material for two reasons. First, the evidence consists of raw medical findings and clinical data, with no medical opinion as to what Plaintiff can still do despite her impairments. Lay persons (including Plaintiff and this Court) are generally "not qualified to interpret raw medical data in functional terms." *Rudd v. Comm'r*, 531 F. App'x 719, 726 (6th Cir. 2013) (quoting *Nguyen v. Sec'y*, 172 F.3d 31, 35 (1st Cir. 1999)). Second, Plaintiff has not identified any specific evidence that is necessarily incompatible with performance of even a limited range of sedentary work.

**Plaintiff's remaining arguments are unpersuasive.**

Plaintiff argues that the ALJ's mental RFC findings are not supported by substantial evidence because the ALJ based them, in part, on "stale" medical opinions, which were over five years old at the time of the ALJ's decision. Specifically, in determining Plaintiff's RFC, the ALJ's December 13, 2016 decision referenced the November 15, 2011 examination findings of certified psychologist Ollie C. Dennis, Ed.D. [AR 39, 1307-13] and gave "partial weight" to the December 4, 2011 findings of non-examining psychologist Ann Hess, Ph.D. [AR 44, 1323-39] and the March 30, 2012 findings of non-examining psychologist Ed Ross, Ph.D. [AR 1353-69]. There will always be a gap between the time the agency experts review the record and give their opinion and the time the hearing decision is issued. *Kelly v. Comm'r*, 314 F. App'x 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."

7

*Id.* Plaintiff has identified no subsequent evidence that is inconsistent with the opinions of Drs. Dennis, Hess, and Ross and/or the ALJ's mental RFC findings.

Plaintiff argues that the ALJ's decision failed to address her obesity as required by Social Security Ruling (SSR) 02-1p, 2002 WL 34686281. The ruling does not mandate any particular mode of analysis but only directs an ALJ to consider a claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation process. *Miller v. Comm'r*, 811 F.3d 825, 835 (6th Cir. 2016) (citing *Nejat v. Comm'r*, 359 F. App'x 574, 577 (6th Cir. 2009)). An ALJ satisfies this requirement, among other ways, if he credits "RFCs from physicians who explicitly accounted for [a claimant's] obesity. *Id.* (quoting *Coldiron v. Comm'r*, F. App'x 435, 443 (6th Cir. 2010)). In finding that Plaintiff can perform medium work, Dr. Mukherjee noted Plaintiff's weight of 262 pounds and height of 64 inches. [AR 1316.] The ALJ gave Dr. Mukherjee's findings "partial weight"; acknowledged that Plaintiff suffers from severe, or vocationally significant, obesity; and, based on the evidence as a whole, concluded that Plaintiff retains the capacity to perform a limited range of sedentary work. [AR 37, 41, 43.]

Plaintiff argues that the ALJ's second finding is not supported by substantial evidence: "After considering the evidence of record, the undersigned finds that [1] the claimant's current medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [2] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." [AR 42.] When, as here, the alleged symptoms are of greater severity than can be established based solely on the objective medical evidence, the ALJ will consider other medical and non-medical factors. 20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment." *Wilson v. Comm'r*, 618 F. App'x 281, 286 (6th Cir. 2015) (quoting *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997)). The ALJ's decision reflects adequate consideration of the relevant factors,

8

including taking care of her children, managing a household and finances, and part-time work at Pizza Hut. [AR 43-44.] While Plaintiff disagrees with the ALJ's assessment, she has failed to show that the ALJ acted outside his province or abused his discretion in balancing the regulatory factors.

Finally, Plaintiff argues that, while the ALJ acknowledged that she suffers from severe, or vocationally significant, "status-post right L5-S1 hemilaminectomy with a partial facetectomy" [AR 37], the ALJ erred in failing to recognize her severe "multilevel lumbar disease." (Docket # 15 at 3.) The ALJ found that Plaintiff suffers from "back problems," including "facet degenerative changes and canal narrowing," which would affect her abilities to engage in "heavy lifting" and "bending and stooping." [AR 42-43.] The ALJ found that Plaintiff has several severe impairments and, in determining her RFC, "consider[ed] the limiting effects of all impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e); [AR 37, 41-44]. Therefore, "whether the ALJ characterized [a particular impairment] as severe or non-severe … is 'legally irrelevant' and does not amount to [reversible] error." *Hedges v. Comm'r*, 725 F. App'x 394, 395 (6th Cir. 2018) (citing *Maziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir. 1987)).

**ORDER**

Because the ALJ's decision is supported by substantial evidence and is in accord with applicable legal standards, and because Plaintiff has not shown that a "sentence six" remand is warranted, Plaintiff's motion for a remand (Docket # 16) is hereby DENIED, the Commissioner's final decision is AFFIRMED, and Plaintiff's complaint is DISMISSED.

January 30, 2019

**Lanny King, Magistrate Judge**
**United States District Court**